IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GARY CORBITT, *as personal representative and next friend of the Estate of Brittney Corbitt, deceased*,<br><br>Plaintiff,<br><br>v.<br><br>HENRY COUNTY COMMISSION, *et al.*,<br><br>Defendants. | CASE NO. 1:22-cv-00693-RAH<br>[WO] |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the Defendants' *Motion to Dismiss*. (Doc. 32.) With Defendants' motion having been fully briefed and thus ripe for decision, for the reasons more fully set forth below, the motion is due to be GRANTED.

## FACTS AND PROCEDURAL HISTORY

Construing the factual allegations in the Amended Complaint as true, as the Court must at this procedural stage, the facts giving rise to this lawsuit are as follows:

The Corbitt family is black and lives on Ozark Road in Newville, Henry County, Alabama. (Doc. 30 at ¶¶ 2, 12.) Gary Corbitt is the father of Brittney Corbitt, and Brittney's aunt lives a few doors down from Gary. (*Id.* at ¶ 6.) After an altercation with her roommate on February 17, 2022, Brittney fled her apartment in Dothan, Alabama and traveled to Ozark Road in Newville. (*Id.* at ¶ 12.) Unfortunately, the individuals involved in the altercation in Dothan followed her to Ozark Road. (*Id.* at ¶ 12.) Upon arriving in Newville, Brittney and several others gathered in an area somewhere along Ozark Road. Gary heard gunfire that afternoon

1

around 3:54 p.m. and texted Brittney to come home.  (*Id.* at ¶ 13.)  No law enforcement responded to the gunfire.[1]  (*Id.*)

At some point, Brittney went to her aunt's home on Ozark Road.  (*Id.* at ¶ 14.)  After a second round of gunfire was heard around 5:20 p.m. near the aunt's home, Gary called 911 and reported that someone was shooting at Brittney.  (*Id.* at ¶¶ 14–18.)  The dispatcher said that she would dispatch the Henry County Sheriff's Office, which maintained its office approximately 10 minutes away from Ozark Road.  (*Id.* at ¶ 18.)

Almost immediately, the dispatcher routed the call to Deputy Julian Alvarado, who allegedly said that "They are always shooting over on Ozark Road."  (*Id.* at ¶¶ 19–20.)  Deputy Alvarado did not respond to the call; instead, he ended his shift and went home.  (*Id.* at ¶ 21.)

Approximately an hour and a half later, Gary received a call that Brittney had been shot.  (*Id.* at ¶¶ 24.)  Gary went to the scene.  He found Brittney shot in the head, bleeding, and lifeless.  (*Id.* at ¶ 25.)  Additional 911 calls[2] were made, but neither the sheriff's office nor emergency responders arrived on the scene until at least an hour later.  (*Id.* at ¶¶ 27–28.)

Gary, as representative of the Estate of Brittney Corbitt, originally brought this suit against Deputy Alvarado, Sheriff Will Maddox, the Henry County Sheriff's Office, and the Henry County Commission.  (Doc. 1.)  Against the Commission, Gary brought claims under 42 U.S.C. § 1981/1983 and 42 U.S.C. § 2000d stemming from the Commission's alleged failure to provide nondiscriminatory emergency services to Henry County residents.  Gary also brought an Equal Protection claim

---

[1] Gary does not allege that law enforcement was called about this first round of gunfire, or that law enforcement was aware of it.

[2] Gary does not allege when exactly these renewed 911 calls were made.

against all Defendants as well as an Alabama state law claim for wrongful death. Gary then filed an Amended Complaint after the Court granted a motion to dismiss for failure to state a claim. The Amended Complaint is substantially similar to the original except that the Henry County Sheriff's Office is no longer a party and the current Henry County Sheriff, Eric Blankenship, has been added as a defendant. The claims otherwise remain the same.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555, 570. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

"To decide whether a complaint survives a motion to dismiss, [district courts] use a two-step framework." *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir.

2018).  "A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of the truth—legal conclusions must be supported by factual allegations."  *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010).  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 556 U.S. at 679.  Here, Gary "bear[s] the burden of setting forth facts that entitle [him] to relief."  *Worthy v. City of Phenix City*, 930 F.3d 1206, 1222 (11th Cir. 2019).

## DISCUSSION

The Defendants move for dismissal of all claims, arguing that Gary's claims fail to allege facts upon which a claim for relief can be granted on each count.  And the individual Defendants also argue their entitlement to qualified immunity.

### A. Section 1981

Gary alleges in Count A that the Commission, through the Henry County E-911 Department, violated 42 U.S.C. § 1981 by providing "unequal and discriminatory services to African American residents[.]" (Doc. 30 at ¶ 36.)  Any claim brought under 42 U.S.C. § 1981 merges into a 42 U.S.C. § 1983 claim when a state actor is a defendant.  *See Butts v. County of Volusia*, 222 F.3d 891, 892 (11th Cir. 2000).  "A municipality, county, or other local government entity is a 'person' that may be sued under § 1983 for constitutional violations caused by policies or customs made by its lawmakers or by 'those whose edicts or acts may fairly be said to represent official policy.'"  *McMillian v. Johnson*, 88 F.3d 1573, 1577 (11th Cir. 1996) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  For Gary to successfully hold the Commission liable, he must "identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county."  *Grech v. Clayton Cnty. Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (citing *Monell*, 436 U.S. at 690–91).  Because counties will rarely "have an officially-

adopted policy of permitting a particular constitutional violation, most plaintiffs . . . must show that the county has a custom or practice of permitting the action complained of and that the county's custom or practice is the moving force behind the constitutional violation." *Id*. at 1330 (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)) (cleaned up).  "A custom or practice, while not adopted as an official formal policy, may be so pervasive as to be the functional equivalent of a formal policy." *Id*. at 1330 n.6.  A single incident of allegedly unconstitutional conduct is generally not so pervasive as to be a custom or practice under which liability may be imposed upon a county. *Id*.

The Commission argues that Gary fails to sufficiently plead either an official county policy or unofficial custom that would hold the Commission liable, or a single act or decision of an official with final policy making authority in the area of the act or decision. (Doc. 33 at 12 (citing to *Grech*, 335 F.3d at 1329–30).)  That appears so.  Count A deals exclusively with the acts of the Henry County E-911 Department—a non-party—yet attributes all actions of the E-911 Department to the Commission without any explanation.  (Doc. 30 at ¶¶ 35–37.)  And further, nowhere in the Amended Complaint does Gary allege that any county official had "final policymaking authority" in how the E-911 Department distributes emergency resources throughout Henry County, nor does he point to any official policy or unofficial custom shown through repeated acts by a policymaker that evidences black communities being discriminated against based on their race by the Commission.  Since Gary did not plausibly allege any policy, official or otherwise, or any unofficial custom or practice shown through repeated acts of a final policymaker for the Commission, Count A is due to be dismissed for failure to state a claim.

## B. Equal Protection

### 1. Failure to State a Claim

In Count B, Gary alleges that all Defendants[3] violated the Equal Protection Clause of the Fourteenth Amendment "by providing unequal services in Henry County, Alabama including essential government services such as emergency police and medical services" on account of Brittney's or the Newville community's race. (Doc. 30 at ¶¶ 40–42.)  Defendants argue that the claim should be dismissed because Gary has failed to plausibly allege a violation of any constitutional rights.  (Doc. 33 at 13.)

The Equal Protection Clause of the Fourteenth Amendment "requires government entities to treat similarly situated people alike." *Campbell v. Rainbow City*, *Ala.*, 434 F.3d 1306, 1313 (11th Cir. 2006).  "To establish an equal protection claim, a [plaintiff] must demonstrate that (1) he is similarly situated with other [persons] who received more favorable treatment," *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001) (quotation omitted), and (2) the defendant "engaged in invidious discrimination against him based on race, . . . national origin, . . . or some other constitutionally protected interest." *Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d, 932-33 (11th Cir. 1986).  And under a "class of one" theory, a plaintiff must plead enough facts to show (1) that the defendant intentionally treated plaintiff differently than similarly situated individuals and (2) that defendant had no rational basis for treating plaintiff differently. *Campbell*, 434 F.3d at 1314 (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)).  To be similarly situated, the comparators must be *prima facie identical in all relevant aspects*. *Id.* (citation omitted).

---

[3] Although this count is labeled as one applying to all Defendants, Gary does not allege anything against Blankenship.

Other than broadly alleging that the Commission treats black communities differently, Gary provides only conclusory allegations that Brittney or the Newville community were treated differently from a similarly situated person or community concerning the provision of law enforcement or emergency services. Gary has pleaded no facts that allow a comparison of Brittney or Newville to other persons or communities. His allegations of general differential treatment are vague and conclusory, and therefore are not enough to state an equal protection claim. *See Bailey v. Lowndes Cnty. Comm'n*, No. 2:22-cv-578-WKW, 2023 WL 1997705, at *3 (M.D. Ala. Feb. 14, 2023) (holding that allegations of "nameless other establishments" that were allowed to operate and engage in alcoholic transactions and were issued liquor licenses were too general for pleading purposes). *See also Etherton v. City of Rainsville*, 662 F. App'x 656, 662 (11th Cir. 2016) ("[B]are allegations of unequal enforcement are not enough to state a 'class of one' equal protection claim." (citations omitted)).

Further, Gary's Amended Complaint fails to allege how each of the Defendants discriminated against Brittany or the Newville community, specifically. He merely recites that each Defendant "denied the individual Plaintiff equal protection based on their race." (Doc. 30 at ¶¶ 40–42.) Gary does not even provide an allegation involving Sheriff Blankenship in this count. For the reasons listed above, Count B is due to be dismissed.

### 2. Qualified Immunity

But even if Gary had plausibly alleged an Equal Protection violation, qualified immunity would still dispose of this claim against Defendants Maddox, Blankenship, and Alvarado, all of whom are sued in their individual capacities. Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the "complaint fails to allege the violation of a clearly established

7

constitutional right." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

Government officials sued in their individual capacities are protected by qualified immunity unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Eleventh Circuit has established a two-part analysis to determine whether a defendant is entitled to qualified immunity. A defendant must first show that he was "engaged in a 'discretionary function' when he performed the acts of which the plaintiff complains." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) (citation omitted). If "the court concludes that the defendant was engaged in a discretionary function, then the burden shifts to the plaintiff to show that the defendant is *not* entitled to qualified immunity." *Id.* To do so, the plaintiff must show "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Id.*

The parties in this case do not contest that Maddox, Blankenship, and Alvarado were engaged in discretionary functions by working in the line and scope of their duties, so the Court proceeds to consider whether Gary has pleaded sufficient facts plausibly showing that the individual Defendants violated a constitutional right and whether that right was clearly established at the time of the alleged violation. And as to this consideration, the Court elects to discuss the latter, as that appears to be Gary's focus in his brief.

The Eleventh Circuit has identified three different ways a plaintiff can show that officials had fair warning of a clearly established right. First, a plaintiff can "show that a materially similar case has already been decided[.]" *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). "This category consists of cases where judicial precedents are tied to particularized facts." *Loftus v. Clark-Moore*,

8

690 F.3d 1200, 1204 (11th Cir. 2012) (citation omitted).  In determining whether a right is clearly established under this prong, a court looks to "judicial decisions of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the relevant state." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 n.6 (11th Cir. 2007).  Second, a plaintiff can "show that a broader, clearly established principle should control the novel facts" of the particular situation at issue.  *Mercado*, 407 F.3d at 1159.  "[T]he principle must be established with obvious clarity by the case law so that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Loftus*, 690 F.3d at 1205 (alteration in original) (citation omitted).  Put another way, "in the light of pre-existing law the unlawfulness must be apparent." *Id.* (citation omitted).  Third, a plaintiff may show that his case "fits within the exception of conduct which so obviously violates [the] constitution that prior case law is unnecessary."  *Mercado*, 407 F.3d at 1159.  Notwithstanding the availability of these three independent showings, the Eleventh Circuit "has observed on several occasions that 'if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1312 (11th Cir. 2019) (quoting *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009)).

Although not the picture of clarity, Gary appears to argue that the individual Defendants violated "clearly established" law by pointing to allegedly materially similar cases that have already been decided—*Ammons v. Dade City,* 783 F.2d 982 (11th Cir. 1986) (per curiam), *Dowdell v. City of Apopka*, 698 F.2d 1181 (11th Cir. 1983), and *Hawkins v. Town of Shaw*, 437 F.2d 1286 (5th Cir. 1971).  For these cases to be instructive for qualified immunity purposes, they must have "materially similar factual circumstances," or in other words, state that "Y Conduct is unconstitutional in Z Circumstances."  *Griffin Indus.*, 496 F.3d at 1209 (quoting *Vinyard v. Wilson*,

311 F.3d 1340, 1351 (11th Cir. 2002)).  In this category, "the inquiry is whether the facts of a previous case are fairly distinguishable from the case before the court." *Id.*

Gary admits that these cases only generally "involve challenges by African-American citizens to the unequal provision of municipal and/or governmental services." (Doc. 39 at 14.)  *Ammons* dealt directly with intentional discrimination in violation of the Fourteenth Amendment regarding street paving, resurfacing and maintenance, and storm water drainage facilities to the black community of Dade City.  783 at F.2d at 983.  In *Dowdell*, similar street and storm water services were at issue.  698 F.2d at 1184.  And in *Hawkins,* governmental services such as street paving, lighting, sanitary sewers, storm water draining, and fire hydrants were provided by the town in a discriminatory manner.  437 F.2d at 1288.  None of these cases involve the provision of law enforcement services from a county sheriff's office or emergency medical services, nor do they involve defendants who are county commissions, sheriffs, or deputy sheriffs.  As a result, these cases are materially distinguishable from Gary's factual allegations and therefore Gary has not shown that a materially similar case has already been decided.  *See Griffin Indus.*, 496 F.3d at 1209; *Helm v. Rainbow City, Ala.*, 989 F.3d 1265, 1275–76 (11th Cir. 2021) (holding that an officer who subjected the plaintiff to multiple taser shocks was "materially indistinguishable" to cases where an officer repeatedly tased a non-belligerent person who was not suspected of committing a crime, like the plaintiff).

Regarding the other two ways of demonstrating that a right was "clearly established," Gary has also not plausibly shown that either a broader, clearly established principle should control the novel facts of the particular situation at issue, or that his case fits within the exception of conduct which so obviously violates the Constitution that prior case law is unnecessary.  This is especially true of Maddox and Blankenship, who are not alleged to have been involved in, let alone aware of,

10

the gunfire incidents or calls for assistance. In fact, as to Sheriff Blankenship, he did not even serve as sheriff at the time of the incident nor is he alleged to have served in any policy-making role at that time. Alvarado is admittedly different, as the allegations against him are that he received a dispatch call and elected to go home instead of responding to the call for assistance.

But even if the allegations against Alvarado are assumed true, Gary still bears the burden of showing—and arguing—what broader, clearly established principle is applicable or what conduct so clearly violated the Constitution such that prior case law is unnecessary. And nowhere in his response does Gary do so. And it is not for this Court to conduct legal research for Gary and to make Gary's argument for him. Such an action would be inappropriate because "the onus is upon the parties to formulate arguments[.]" *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

And further, even if Gary explicitly argued that Alvarado's conduct denied Brittany's clearly established equal protection rights, Gary's general assertion of those rights does not sufficiently meet his burden of showing a "clearly established" right. In other words, Gary has not pleaded facts showing that the law at the time of the incident gave Alvarado fair warning that his conduct was unlawful or unconstitutional.

Since Gary does not plausibly allege either a statutory or constitutional provision that makes the conduct of the individual Defendants illegal, unlawful or unconstitutional, does not implicate broad principles of law that are appropriate or obvious, and does not cite materially similar case law, qualified immunity bars his Equal Protection claim against the individual Defendants.

**C. Title VI**

In Count C, Gary alleges the Henry County Commission[4] violated 42 U.S.C. § 2000d by providing unequal law enforcement and medical services to its black residents. (Doc. 30 at ¶ 46.)

Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. "Title VI itself directly reach[es] only instances of intentional discrimination." *Alexander v. Sandoval*, 532 U.S. 275, 281 (2001) (quoting *Alexander v. Choate*, 469 U.S. 287, 293 (1985)). Defendants argue that Gary has failed to plead intentional discrimination by the Commission, and therefore the claim should be dismissed. (Doc. 33 at 19.)

Concerning the Commission, Gary does not allege any facts that plausibly create an inference of intentional discrimination in a non-conclusory manner. Gary attempts to cobble together instances of alleged discrimination from the same incident to show that the E-911 Department exhibited discriminatory intent on the date of the shooting. Specifically, Gary broadly alleges that the Department (1) failed to timely dispatch law enforcement to Ozark Road, (2) failed to follow-up with Gary following his call, and (3) has "historically neglected providing racially equal [emergency medical services] to African-American communities within Henry County." (Doc. 30 at ¶¶ 32–33.) Other than these allegations and a copy of a short news story about Henry County possessing only three ambulances, Gary offers little other factual support in his Amended Complaint. (Doc. 39-1.)

---

[4] The Court construes this claim as proceeding only against the Henry County Commission, despite the reference to the Henry County Sheriff's Office in the actual text of the pleading.

But in direct contradiction to his allegation that the E-911 Department failed to timely dispatch someone, Gary also alleges that an E-911 dispatcher did, in fact, dispatch Gary's call to law enforcement—Deputy Alvarado—and did so within the same minute (5:20 p.m.) of receiving Gary's call. (Doc. 30 at ¶ 19.) Other than this one instance of a Commission-related act, Gary does not point to any other act as evidence of intentional discrimination. Having only three ambulances to serve Henry County is unfortunate, but it is not sufficient to create a plausible inference of intentional race discrimination by the Commission.

A necessary factual component of any discrimination-based claim is that the accused acted in a discriminatory manner. Vague and conclusory statements of discrimination are not sufficient. And here, the Amended Complaint is silent as to any non-conclusory discriminatory actions by the Commission. In simpler terms, Gary has not adequately asserted any policy, custom, practice, act, or omission that would establish liability against the Commission. While a plaintiff is not obligated to prove his claim at the motion to dismiss stage, a plaintiff must provide sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. As a result, Count C is due to be dismissed.

### D. Wrongful Death Claim

In Count D, Gary asserts a state law wrongful death claim against all Defendants. (Doc. 30 at ¶¶ 48–58.) Defendants move for dismissal based on Gary's failure to plausibly allege a wrongful death claim and their entitlement to immunity. Because the Court has determined that the Defendants' federal claims are due to be dismissed, the Court elects not to exercise jurisdiction over the state law claim. *See United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *see also Baggett*

*v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) ("State courts, not federal courts, should be the final arbiters of state law."); *Ingram v. School Bd. of Miami-Dade Cnty.*, 167 F. App'x 107, 108 (11th Cir. 2006) (per curiam) ("Where . . . a court has dismissed all federal claims from a case, there is a very strong argument for dismissal, especially where the federal claims are dismissed prior to trial."). Accordingly, Gary's state law claim will be dismissed without prejudice.

### E. Whether Gary should be allowed to file an amended complaint

Gary argues in his response that he should be given leave to file a Second Amended Complaint if the Court finds it deficient. It is true that Federal Rule of Civil Procedure 15(a) states that leave to amend "shall be freely given when justice so requires" and that trial courts have broad discretion in permitting or refusing to grant leave to amend. *Forman v. Davis*, 371 U.S. 178, 182 (1962). Leave should be "freely given" when:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Id.* Defendants counter by pointing out that Gary previously was instructed by the Court to file an amended complaint to address the pleading deficiencies and despite this instruction, Gary filed an Amended Complaint that contained only minor changes, none of which cured the deficiencies of the original Complaint. Gary even failed to remove the Henry County Sheriff's Office as a defendant in Count C, despite not actually suing the sheriff's office. (Doc. 30 at 11.)

The Court is under no obligation to allow Gary to amend his complaint for a second time to "cure deficiencies by amendments previously allowed[,]" especially

14

through an embedded request not made by formal motion, and the Court will not allow it now. *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 930 (11th Cir. 2016) (holding that the district court did not err in dismissing a complaint with prejudice when the plaintiff already had a chance to amend their complaint and improperly requested leave to amend in a responsive pleading).

## CONCLUSION

Accordingly, it is **ORDERED** that Defendant's *Motion to Dismiss* (Doc. 32) is **GRANTED** as follows:

1. Counts A, B and C of the Amended Complaint are **DISMISSED with prejudice and without leave to amend**;
2. Count D is **DISMISSED without prejudice**;
3. The Clerk of Court is **DIRECTED** to close this case.
4. A separate final judgment will follow.

**DONE** on this the 11th day of December 2023.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE